UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

KENNETH B. BARCLAY, )
　　　　　　　　　　　　）
　　Plaintiff, )
　　　　　　　　　　　　）
vs. ) Civil Action No. CV-97-S-0498-NE
　　　　　　　　　　　　）
NORANDAL USA, INC., et al., )
　　　　　　　　　　　　）
　　Defendants. )
_____)

**ENTERED**

**MAY 2 0 1997**

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion to remand. Upon consideration of the motion, briefs, and pleadings, this court concludes the motion is due to be denied.

### I. STATEMENT OF CASE

Plaintiff originally filed this action in the Circuit Court of Jackson County, Alabama, on January 29, 1997, presenting state law claims for fraud and breach of contract. Prior to 1988, plaintiff worked for defendant Norandal U.S.A., Inc. ("Norandal") in a position covered by the collective bargaining agreement negotiated by Norandal and the United Steel Workers of America, AFL-CIO. Defendants Mike Taylor, Hoyt Jones, Douglas J. Thornhill, Norm Larson, Jack Cibulka, and Carl English are alleged to be "agents, servants, employees or officers of Norandal." (Plaintiff's Complaint, ¶ 5.)

On or about January 1, 1988, plaintiff was promoted to a supervisory position (finishing shift supervisor) that was not within the bargaining unit. Plaintiff alleges he and Norandal management entered into an agreement for the position that was

/2

separate and distinct from the collective bargaining agreement. Plaintiff claims

> [t]he terms of the employment contract provided that plaintiff was to be promoted from his old position to supervisor, that he was to be payed at a wage increase [sic] and additional regular overtime plus one hour of overtime per day, that he was only to be fired for stealing or gross insubordination and that if he decided that he no longer wanted to be employed as supervisor, he could take his old job back in the bargaining unit.

(*Id.*, ¶ 16.)  Plaintiff alleges that on February 29, 1992, defendants "deprived Plaintiff of his wage increase of overtime of one hour per day." (Id., ¶ 17.)  Plaintiff also claims that

> in February 1995[,] the plaintiff requested to be transferred back to the bargaining unit. This request was denied by Defendants and at said time plaintiff first learned that defendants had never intended to allow transfer back to the bargaining unit, the inducement to take the supervising job.

(*Id.*, ¶ 18.)  Those actions by defendants constitute the basis for plaintiff's fraud and breach of contract claims.  Plaintiff also alleges that his employment was terminated as a proximate result of defendants' actions. (*Id.*, ¶¶ 14, 20.)

On February 28, 1997, defendants removed the case to this court, asserting federal question jurisdiction.  Plaintiff now moves to remand the action to the Circuit Court of Jackson County, Alabama.

## II. DISCUSSION

Defendants contend this court has federal question jurisdiction under 28 U.S.C. § 1331, because

> [p]laintiff's state law claims necessarily involve interpretation of the collective bargaining agreement. As a result the Court has exclusive subject matter

2

jurisdiction over this dispute pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

(Defendants' Petition for Removal, ¶ 5.)  To determine whether federal question jurisdiction exists, this court must examine plaintiff's well-pleaded complaint to see if it raises an issue of federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Federal issues that arise solely as a defense to state law action (sometimes called "conflict preemption") do not confer federal question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). Congress may so completely preempt a particular area, however, that any complaint raising claims in that area is necessarily federal in nature. *Metropolitan Life*, 481 U.S. at 63-64, 107 S.Ct. at 1546. To the extent Congress has completely displaced state law claims with federal law, therefore, a plaintiff's attempt to allege those state law claims is properly characterized as a complaint arising under federal law. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430.

Section 301 of the "Taft-Hartley," Labor Management Relations Act of 1947 ("LMRA") was enacted to ensure uniform interpretation of collective bargaining agreements through the application of uniform federal law.[1] *Linge v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988). When

---

[1] Section 301 provides: "Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to citizenship of the parties." 29 U.S.C. § 185(a).

3

the "heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430 (quoting *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968)). Although the explicit terms of the collective bargaining agreement may not be on point, it still is a matter of federal contract interpretation whether the words of a collective bargaining agreement create implied rights. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 21, 105 S.Ct. 1904, 1913, 85 L.Ed.2d 206 (1985). Thus, section 301 has complete preemptive force over any claims "that are either founded directly on rights created by a collective bargaining agreement, or substantially dependent upon an analysis of a collective bargaining agreement." *Darden v. United States Steel Corp.*, 830 F.2d 1116, 1119 (11th Cir. 1987)(citing *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2430).

> In sum, if it is necessary to interpret express or implied terms of a [collective bargaining agreement], a state law claim is completely preempted by § 301, the claim is deemed federal in nature from its inception, and the complaint is deemed one that a defendant can remove.

*Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 499 (7th Cir. 1996).

Although the preemptive effect of § 301 is expansive, preemption does not occur in every situation in which a provision of a collective bargaining agreement comes into play. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in

4

the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994).

Plaintiff asserts the rights he seeks to enforce are not based on the collective bargaining agreement, but are instead based on an independent agreement made with Norandal when he was promoted to the position of finishing shift supervisor. The existence of that agreement is evidenced by a September 11, 1990 memorandum from J. P. Brandimarte, production and maintenance manager of Norandal's Scottsboro division, which states in pertinent part:

> Per our discussion on your concerns about losing your seniority in the event you were terminated as a foreman, <u>our contract</u> [*i.e.*, the collective bargaining agreement] states the Company "may" elect to restore an employee back to the ranks if necessary. In your situation, I don't feel this will be the case; and I know you feel confident of that also. However, I will honor your request to return, in case of termination as long as <u>the contract language</u> remains the same, and as long as the reason is not for some gross misconduct such as gross insubordination, stealing, etc..

(Defendants' Response, Exhibit 3 (emphasis supplied).)

In response, defendants point to the following "Supervisory Seniority" provision of the collective bargaining agreement between Norandal and the United Steelworkers of America, AFL-CIO, which is referenced in the foregoing memorandum by the phrases "our contract" and "the contract language":

> Employees who are promoted to foreman or supervisory jobs from production and maintenance departments, whose employees are part of the bargaining unit and who are subsequently demoted during the term of the Agreement, may be returned to the production or maintenance department from which they were promoted and shall be credited with full plant and departmental seniority including the period spent as a foreman or supervisor.

5

> If returned within one hundred and twenty (120) days from
> the effective date of this Agreement or the date he was
> promoted to the supervisory job, whichever is later, to
> his prior department, he shall be placed on the job
> classification in such department to which his seniority
> entitles him and that he has the ability to perform. If
> returned after one hundred and twenty (120) days from the
> effective date of this Agreement or the date that he was
> promoted to a supervisory job, whichever is later, to his
> prior department, he shall be placed on an available job.
> If a job is not available, one shall be created by laying
> off the junior employee in the department, subject to the
> Reduction in Force Section of this Article.

(Defendants' Response, Exhibit 1.) Defendant argues that section 301 has complete preemptive force over plaintiff's claims, because they are either founded directly on rights created by the collective bargaining agreement, or they are substantially dependent upon an analysis of the collective bargaining agreement.

The rights plaintiff seeks to enforce are *not* founded directly on the collective bargaining agreement. As J. P. Brandimarte's memorandum to plaintiff correctly recites, the collective bargaining agreement merely provides that management "may," in its discretion, return a promoted employee to "the production or maintenance department from which they were promoted...." Thus, the collective bargaining agreement creates no absolute right in the employee (or duty on the part of the employer) to return a bargaining unit employee who had been promoted to a supervisory position to the collective bargaining unit. On the other hand, the individual contract between plaintiff and Norandal, evidenced by J. P. Brandimarte's memorandum, states that management "will" return plaintiff to the collective bargaining unit, provided: (1) the language in the collective bargaining agreement stays the same;

6

and, (2) the need for plaintiff's return to the collective bargaining unit is not necessitated by "gross insubordination, stealing, etc." Thus, the "right" to return to the collective bargaining unit is created by the plaintiff's individual contract, not the collective bargaining agreement.

Nonetheless, this court concludes that plaintiff's claims still are preempted by § 301, because those claims are substantially dependent upon an analysis of the collective bargaining agreement. As Brandimarte's memorandum states, the right to return to the bargaining unit will last only "as long as the contract language [i.e., collective bargaining agreement] remains the same." Thus, according to the terms of plaintiff's individual contract, the parties must analyze the collective bargaining agreement to determine if the right to return to the bargaining unit still exists.[2] Defendants also correctly assert that the following questions are raised by plaintiff's complaint:

> Into what position would Barclay be placed if he sought to return to the bargaining unit or prevailed on his

---

[2] The relevant provision of the collective bargaining agreement was modified through amendments that became effective several years after plaintiff's promotion, on October 11, 1993. The new "Supervisory Seniority" provision provides:

> An employee who is transferred or promoted from the bargaining unit to an "excluded position" shall be given one-hundred twenty (120) calendar days from the date of such promotion to return to his former job in the department from which he was promoted without modification of his seniority or his right to return to the job from which he was promoted. After the one-hundred-twenty (120) calendar day time limit, an employee who remains in the excluded position will not retain or accumulate bargaining unit seniority.

(Defendants' Response, Exhibit 3.)

7

> contract claim? Would he be able to "bump" into the position he left? Would he have seniority?

(Defendants' Brief, at 3.) Those questions can only be answered by referencing the collective bargaining agreement. Thus, plaintiff's claims are substantially dependent upon an analysis of the collective bargaining agreement, and are, therefore, completely preempted by § 301 of the LMRA. Accordingly, plaintiff's claims arise under federal law.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is due to be denied. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 20th day of May, 1997.

_____
United States District Judge

8