```
             UNITED STATES DISTRICT COURT                FILED
             NORTHERN DISTRICT OF ALABAMA
                 NORTHEASTERN DIVISION               98 FEB 25 PM 12:50

KENNETH B. BARCLAY,          )                        U.S. DISTRICT COURT
                             )                         N.D. OF ALABAMA
     Plaintiff,              )
                             )
vs.                          )    Civil Action No. CV-97-S-0498-NE
                             )
NORANDAL USA, INC., et al.,  )
                             )                          ENTERED
     Defendants.             )
                             )                         FEB 2 5 1998
```

## MEMORANDUM OPINION

Plaintiff filed this action in the Circuit Court of Jackson County, Alabama, on January 29, 1997, presenting state law claims for fraud and breach of contract. On February 28, 1997, defendants removed the case to this court, asserting federal question jurisdiction based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. By order entered May 20, 1997 (Doc. No. 12), this court held that plaintiff's state law claims were preempted by § 301.

The action now is before the court on defendants' motion for summary judgment. Upon consideration of the pleadings and briefs, this court concludes the motion is due to be granted.

### I. STATEMENT OF FACTS

Kenneth B. Barclay was hired as an hourly employee at the Revere Copper & Brass aluminum rolling mill in Scottsboro, Alabama during 1969. (Barclay Affidavit at 1; Jones Affidavit at 1.) Barclay was a member of a bargaining unit covered by a collective bargaining agreement (CBA) between the union and his employer.

(Barclay Affidavit at 1.) Defendant Norandal U.S.A., Inc. ("Norandal") assumed operation of the Scottsboro facility during 1985, and retained many of the former Revere Copper & Brass employees, including Barclay. (Id.) Defendants Mike Taylor, Hoyt Jones, Douglas J. Thornhill, Norm Larson, Jack Cibulka, and Carl English are alleged to be "agents, servants, employees or officers of Norandal." (Complaint ¶ 5.)

Barclay remained a member of the bargaining unit, subject to the CBA, until 1988. (Id. ¶ 7; Jones Affidavit Exhibit 3.) On or about January 1, 1988, Barclay accepted a promotion to a supervisory position (finishing shift supervisor) that was not within the bargaining unit. (Complaint ¶ 7; Jones Affidavit ¶ 3.) Barclay alleges that, as an inducement to accept the promotion, Jack Brandimarte, who then was a Norandal production superintendent, promised him employment rights that were separate and distinct from the collective bargaining agreement. (Barclay Affidavit at 1; Complaint ¶ 7.)

> The terms of the employment contract provided that plaintiff was to be promoted from his old position to supervisor, that he was to be payed [sic] at a wage increase and additional regular overtime plus one hour of overtime per day, that he was only to be fired for stealing or gross insubordination and that if he decided that he no longer wanted to be employed as supervisor, he could take his old job back in the bargaining unit.

(Complaint ¶ 16.) Barclay's personnel file contains the following note written by Brandimarte:

> Per our discussion on your concerns about losing your seniority in the event you were terminated as a foreman, our contract states the Company "may" elect to restore an

2

> employee back to the ranks if necessary. In your situation, I don't feel this will be the case; and I know you feel confident of that also. However, I will honor your request to return, in case of termination as long as the contract language remains the same, and as long as the reason is not for some gross misconduct such as gross insubordination, stealing, etc.

(Brandimarte Affidavit, Exhibit A.) Barclay alleges that, on February 29, 1992, defendants "deprived Plaintiff of his wage increase of overtime of one hour per day."[1] (Complaint ¶ 17.) Barclay also claims that,

> in February 1995[,] the plaintiff requested to be transferred back to the bargaining unit. This request was denied by Defendants and at said time plaintiff first learned that defendants had never intended to allow transfer back to the bargaining unit, the inducement to take the supervising job.[2]

(*Id.* ¶ 18.) In 1996, Barclay was terminated from his supervisory position, and was not allowed an opportunity to return to his former bargaining unit job. (Barclay Affidavit at 3.) Barclay contends that he was fired "for expressing my dissatisfaction with regard to Norandal USA, Inc., breaching my employment agreement by discontinuing to pay me for the one hour overtime as previously agreed to with Mr. Brandimarte." (*Id.*; Complaint ¶¶ 14, 20.)

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides

---

[1] In affidavit, Barclay asserts that Norandal stopped paying the overtime wage in 1990, shortly after Brandimarte's departure. (Barclay Affidavit at 3.)

[2] In affidavit, Barclay contends that he also sought reinstatement to his bargaining unit job in 1990, after the departure of Brandimarte:

> I made this request to Hoyt Jones, my superior, on several occasions. I requested that the terms of my employment agreement with Mr. Brandimarte be honored; however, Mr. Jones stated that any agreement I had with Mr. Brandimarte left with Mr. Brandimarte.

(Barclay Affidavit at 3.)

3

that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find

4

for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

### III.  DISCUSSION

Defendants assert two grounds in support of their motion for summary judgment.  Initially, they contend plaintiff's claim is barred because he failed to exhaust administrative remedies under the collective bargaining agreement before pursuing this lawsuit. Defendants also contend plaintiff's claim is barred because he failed to sue within the six month statute of limitations governing claims under the collective bargaining agreement.

**A.   Failure to Exhaust CBA Remedies**

The Supreme Court instructs that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ..., or dismissed...." *Allis-Chalmers Corporation v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206, 221 (1985)(citations omitted).

This court already has determined that Barclay's claims are preempted by § 301, because they are

> substantially dependent upon an analysis of the collective bargaining agreement.  As Brandimarte's memorandum states, the right to return to the bargaining unit will last only "as long as the contract language [i.e., collective bargaining agreement] remains the same."  Thus, according to the terms of plaintiff's individual contract, the parties must analyze the collective bargaining agreement to determine if the right

5

to return to the bargaining unit still exists.[3]

(Memorandum Opinion entered May 20, 1997 (Document No. 12), at 7.) Thus, plaintiff's claims must be pursued, if at all, under § 301.

In order to bring an action under § 301 against an employer, a plaintiff must exhaust "any grievance or arbitration remedies provided in the collective-bargaining agreement." *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *accord Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976)("unless [plaintiff] attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed"); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967)("it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement"); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1222 (11th Cir. 1985)("Employees claiming breach of a collective bargaining agreement or wrongful termination of employment by their employer

---

[3] The relevant provision of the collective bargaining agreement was modified through amendments that became effective several years after plaintiff's promotion, on October 11, 1993. The new "Supervisory Seniority" provision provides:

> An employee who is transferred or promoted from the bargaining unit to an "excluded position" shall be given one-hundred twenty (120) calendar days from the date of such promotion to return to his former job in the department from which he was promoted without modification of his seniority or his right to return to the job from which he was promoted. After the one-hundred-twenty (120) calendar day time limit, an employee who remains in the excluded position will not retain or accumulate bargaining unit seniority.

(English Affidavit, Exhibit 3 at 2.)

6

are bound by that agreement's terms providing a method for resolving disputes between them and their employer").

The Eleventh Circuit has upheld summary judgment for defendants on facts nearly identical to those presented herein. In *Redmond v. Dresser Industries, Inc.*, 734 F.2d 633 (11th Cir. 1984), plaintiff was a member of a bargaining unit represented by the United Mineworkers. The collective bargaining agreement between the union and the company provided that "any employee promoted to a supervisory job and later not needed in that position could be returned to his former job provided that his seniority entitled him to such a job." *Redmond*, 734 F.2d at 634. Those reinstatement rights were valid only for six months after the initial transfer, however. *Id.* Redmond accepted a transfer to a non-bargaining unit position in 1970. Twelve years after his transfer, he was laid off. Redmond claimed he had been told the six month limitation on reinstatement rights did not apply to him, and asked to be returned to the bargaining unit position he formerly had occupied. The company refused. *Id.* Rather than invoke the arbitration and grievance procedures available to him under the collective bargaining agreement, Redmond filed suit in state court. *Id.* at 634-35. The company removed the case to federal court, asserting § 301 preemption. The district court then granted summary judgment, holding that "since Redmond invoked the collective bargaining agreement in his suit, he was bound by it and his failure to exhaust the applicable grievance barred him from

7

bringing suit." *Id.* at 635. The Eleventh Circuit agreed. The court reasoned that, because all of Redmond's claims "derive from his layoff ... and the company's subsequent refusal to reinstate him to a bargaining unit job in accordance with the UMW collective bargaining agreement[,] ... Redmond's rights arise under the collective bargaining agreement." *Id.* Moreover, the court credited the district judge's finding that "Redmond cannot claim both a separate, individual employment agreement and an employment agreement tied to the collective bargaining agreement." *Id.*

It is undisputed that Barclay has not attempted to invoke the grievance procedures contained in the collective bargaining agreement between Norandal and the steelworkers' union. Barclay instead argues that he was not subject to the grievance procedures set out in the CBA because he was a supervisory employee.

The Eleventh Circuit rejected a similar argument in *Redmond*, where the plaintiff contended that it would have been futile to grieve his complaint, because "the union occupied a position hostile to his own." *Id.* at 636. The court held that Redmond's "assumption of union hostility bears no weight since the record clearly shows that he never considered approaching the union for help with his problem even though he was seeking reinstatement in a bargaining unit job." *Id.*

Indeed, the Supreme Court also has rejected such an argument: "It cannot be said in the normal situation, that contract procedures are inadequate to protect the interests of the aggrieved

8

employee until the employee has attempted to implement the procedures and found them so." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 583 (1965).

Like *Redmond*, Barclay has not tried to utilize the grievance procedures available to him; until he makes that attempt and is thwarted, he cannot be heard to complain that the procedures do not apply to him.

Moreover, Barclay is attempting to claim both an independent contract and one which is "tied to the collective bargaining agreement." As already noted, the Brandimarte memorandum submitted by Barclay as evidence of his independent employment contract states that Barclay's right to return to the bargaining unit will last only "as long as the contract language [*i.e.*, collective bargaining agreement] remains the same." Thus, Barclay's separate and independent employment agreement, by its express terms, plainly invokes the CBA. Like *Redmond*, having invoked the CBA in his independent employment contract, Barclay cannot escape application of the grievance procedures contained therein.

### B. Statute of Limitations

Defendants contend that plaintiff's claims are untimely, applying the six month statute of limitations borrowed from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) to this § 301 action. Although plaintiff does not address defendants' argument in brief, the court need not decide that issue given its dismissal of plaintiff's claims on other grounds. The court notes,

9

however, that § 10(b)'s six month limit applies only to actions alleging breach of a union's duty of fair representation, or so-called hybrid actions, which involve both a fair representation claim and a breach of contract claim.  See *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983).  This is not such an action.

### IV.  CONCLUSION

Plaintiff's state-law claim is substantially dependent upon analysis of the terms of the collective bargaining agreement. Therefore, the grievance procedure provided by the contract affords him his exclusive remedy for disputes arising under that contract. Accordingly, defendants' motion is due to be granted.  An order consistent with this opinion will be entered contemporaneously herewith.

DONE this __25th__ day of February, 1998.

_____
United States District Judge

10